IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROSS A. WIEGAND<br>1742 S Street, N.W.<br>Washington, D.C. 20009<br><br>    Plaintiff,<br><br>v.<br><br>LI JUEN MELTON<br>2401 Oakmont Court<br>Oakton, VA 22124<br><br>and<br><br>MELTON MANAGEMENT<br>ASSOCIATES, INC.<br>2401 Oakmont Court<br>Oakton, VA 22124<br><br>    Defendants. | CIVIL ACTION NO. _____ |

## COMPLAINT

Ross A. Wiegand ("Mr. Wiegand"), by counsel, for his complaint against Li Juen Melton ("Ms. Melton") and Melton Management Associates, Inc. ("MMAI"), states as follows:

### PARTIES

1. Mr. Wiegand is a citizen of the District of Columbia, residing at 1742 S Street, N.W., Washington, D.C. 20009.

2. On information and belief, Ms. Melton is a citizen of Virginia, residing at 2401 Oakmont Court, Oakton, VA 22124.

3. On information and belief, MMAI is a corporation organized and existing under the laws of the State of Virginia, with its principal place of business located in Oakton, Virginia.

5/6649.1

## APPLICABLE LAW

4. The contract between the Mr. Wiegand, Ms. Melton and MMAI (the "Parties") was performed in the District of Columbia. Thus, this controversy is governed by the substantive law of that jurisdiction.

## JURISDICTION

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest, fees and costs.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to this claim occurred in the District of Columbia.

## FACTUAL ALLEGATIONS

7. Mr. Wiegand has known Ms. Melton since 1982, as both a social acquaintance and an occasional business associate.

8. Ms. Melton is the President of MMAI, a property development and management company.

9. In December 2003, Melton and MMAI purchased the property located at 116 North Carolina Avenue, S.E. in Washington, D.C. ("Property") for the purpose of performing construction and renovations to convert the Property into condominiums and to resell the individual units for profit (the "North Carolina Avenue Project").

10. In November 2003, in anticipation of the purchase of the Property, Ms. Melton and MMAI extended an offer of employment to Mr. Wiegand through William B. Lucas, a mutual friend who is also an insurance and securities agent to both Ms. Melton and Mr. Wiegand. The offer was for a flat sum of $100,000 to oversee the entirety of the North Carolina

Avenue Project and also additionally provide for Mr. Wiegand's expenses, use of an automobile and lodging at a vacant home she owned in South Riding, Virginia. After a conversation with Ms. Melton, Mr. Wiegand refused the offer. Melton then engaged Daniel T. Lindsay and his company Lindsay Development to complete the construction and renovations for the North Carolina Avenue Project. Shortly thereafter, work on the North Carolina Avenue Project began.

11. In an August 2004 meeting, Ms. Melton told Mr. Wiegand that she was planning to travel to China for a 30-to-45 day business trip in October, but was concerned about leaving the North Carolina Avenue Project unattended for that period of time. She also advised Mr. Wiegand that she was concerned about leaving unattended several other MMAI business ventures, and about leaving her teenage son alone.

12. During the August 2004 meeting, Ms. Melton asked Mr. Wiegand to travel to the Washington, D.C. area by the end of the month of September in order to monitor the North Carolina Avenue Project and the other business ventures, and to care for her son while she was in China for the 30-to-45 day period. Specifically, she asked Mr. Wiegand to (1) monitor the North Carolina Avenue Project on a daily basis to make sure construction was proceeding; (2) monitor the Oriental Regency restaurant in Tyson's Corner, Virginia on a daily basis to make sure it was properly operating and accounting for revenues; (3) periodically monitor renovations to be performed on a New York City apartment; (4) periodically monitor interior build-out on a condominium in Las Vegas; and (5) make sure her son, Christian Melton, attended school. Further, the offer required Mr. Wiegand to be present in the Washington D.C./Northern Virginia area by the end of September.

13. In exchange for performing the work described in Paragraphs 11 and 12, above, Melton offered Mr. Wiegand the following compensation: (1) round trip airfare from Hawaii to

Washington, D.C.; (2) $3,000 cash per month for personal expenses; (3) a car for Mr. Wiegand's business/personal use while in the Washington, D.C. area; (4) room and board at Ms. Melton's home in Oakton, Virginia; (5) a commitment that Ms. Melton and MMAI would enter into a mutually agreeable business venture with Mr. Wiegand in the near future; and (6) a recreational group trip to Bangkok, Thailand at the beginning of 2005.

14. Approximately two days after the lunch meeting described in Paragraphs 11-12, above, Ms. Melton and Mr. Wiegand met again. During this second meeting, Ms. Melton made the same offer to Mr. Wiegand described in Paragraphs 11-13, above, except that she extended the period during which the services would be performed through Christmas 2004. Mr. Wiegand accepted the offer, as modified, during the second meeting.

15. After Mr. Wiegand accepted the offer, Ms. Melton requested Mr. Wiegand's immediate presence in Washington D.C. In response to such pressure from Ms. Melton, Mr. Wiegand traveled from Hawaii and arrived in Washington, D.C. on September 14, 2004, using a ticket purchased by Ms. Melton and MMAI. By accelerating his departure to Washington D.C. by two weeks, Mr. Wiegand was precluded form making arrangements to reduce his expenses in Hawaii.

16. From the time Mr. Wiegand arrived in Washington, D.C. in September 2004, Melton and MMAI changed the terms of the Parties' agreement by increasing the scope of Mr. Wiegand's duties. For example, Ms. Melton assigned Mr. Wiegand the additional job of supervising and carrying out the non-construction aspects of the condominium conversion process for the North Carolina Avenue Project. This involved significant paperwork, interfacing with District of Columbia officials, and consultation with legal counsel. Mr. Wiegand was also assigned to oversee the work of the landscaping subcontractor on the North Carolina Avenue

Project as well as the task of investigating the activities of Mr. Lindsay as they related to his use of Ms. Melton and MMAI's cash funds and credit accounts. Additionally, throughout the contract, Ms. Melton warned Mr. Wiegand that his continued presence at the project site was critical and, if he left the Washington D.C. area for any amount of time, she would consider it an abandonment of the contract and would refuse to make payment thereunder.

17. In or about October 2004, Melton and MMAI assigned Mr. Wiegand, exclusively to the North Carolina Avenue Project and discontinued his involvement in other MMAI business ventures. Once Melton assigned Mr. Wiegand exclusively to the North Carolina Avenue Project, his responsibilities on that project further increased, and instead of general monitoring duties, he became responsible for supervising the completion of the work on a day-to-day basis. For example, he became responsible, *inter alia*, for organizing and coordinating the work of all project subcontractors, including the window supplier, carpenter, electrician, plumber, plumbing fixture suppliers, appliance supplier, appliance installers, stone countertop fabricator/installer, masons, ironworkers, painters, carpet and wood floor supplier/installers, door installation subcontractors, door hardware suppliers, surveyors, pest control/termite treatment, fire control systems subcontractor, HVAC subcontractor, roofers, glaziers, shower enclosure installers, locksmiths, third-party inspectors, electrical fixture suppliers, and custom-signage supplier/installer. In addition, Mr. Wiegand's work overseeing the landscaping subcontractor evolved into him also doing the hard labor.

18. The work described in Paragraph 17 was complicated and made much more difficult and time-consuming because Melton and MMAI had previously engaged Mr. Lindsay to do this work. Mr. Lindsay's performance had been disorganized and inefficient and therefore created significant problems that Mr. Wiegand had to fix.

19. In November 2004, Mr. Wiegand decided to discontinue his services to Melton and MMAI and return home to Hawaii, primarily because of the increased scope of his duties under the Parties' agreement and the confusion resulting from Mr. Lindsay's involvement in the North Carolina Avenue Project. When Mr. Wiegand informed Ms. Melton of his intentions, Ms. Melton offered to provide the following consideration to induce Mr. Wiegand to continue his duties on the North Carolina Avenue Project: (1) to pay Mr. Wiegand 11.25%, of the gross profits from the sales of the completed condominium units at the North Carolina Avenue Project; (2) to pay Mr. Wiegand a bonus if gross sales of the condominium units exceeded $6,000,000.00; (3) to continue payment of the $3,000 per month stipend; (4) to continue providing use of a car; and (5) to continue providing room and board. In exchange for the increased compensation, Mr. Wiegand would (1) exercise overall authority to manage the North Carolina Avenue Project, including the authority to hire a general contractor who would report to him and manage the subcontractors; and (2) provide his uninterrupted managerial presence at the jobsite and provide other services to the North Carolina Avenue Project as needed through the sale of the final condominium unit. Mr. Wiegand accepted this offer.

20. After accepting the offer described in Paragraph 19, above, Mr. Wiegand proceeded to oversee completion of the North Carolina Avenue Project. In addition to completion of construction, he hired a property manager (Atlas Properties, LLC), worked with MMAI to have the condominiums listed for sale with Dawn Nichols ("Ms. Nichols") of Long & Foster Realtors in April 2005, and worked with government authorities and contractors to arrange for issuance of a certificate of occupancy, which was issued in May 2005.

21. From October, 2004 through May 2005, Mr. Wiegand worked full time at the North Carolina Avenue Project. He generally worked six (6) or seven (7) days per week. Ms.

Melton paid him $2500 a month ($500 less than agreed), furnished a vehicle for his use for a majority of the time and provided room and board in her home in Oakton, Virginia.

22.    In May 2005, after the issuance of the certificate of occupancy for the North Carolina Avenue Project, Ms. Melton demanded that Mr. Wiegand leave her home, and stopped paying him the agreed-upon monthly stipend. Instead, she made intermittent payments of sums substantially less than the agreed-upon stipend.

23.    After May 2005, Mr. Wiegand performed substantial work on the North Carolina Avenue Project to facilitate the sale of all the condominium units. This work kept him busy virtually full-time from May 2005 to December 2005. Throughout this period, and each time an issue with the building arose, Ms. Melton told Mr. Wiegand that he needed to resolve it as a condition of payment of the 11.25% of gross profits. His duties in this regard included, *inter alia*: ensuring leaks were fixed; supervising the repair and replacement of laundry units which were malfunctioning; supervising the repainting and waterproofing of the facades of the building; supervising the selection, exchange and installation of fixtures in many of the units; and various other tasks which were required to prepare the units for sale.

24.    From April 2005 through December 2005, Mr. Wiegand served as MMAI's representative and liaison to Ms. Nichols, the realtor, during the sales of each of the condominium units.

25.    Beginning in October 2005, when the Board was elected, Mr. Wiegand served as MMAI's representative and liaison to the Condominium Board.

26.    From inception of the sales of the condominium units in June 2005, Ms. Melton unilaterally discounted the sales prices, making the $6,000,000 sales goal, and the bonus conditioned thereon, impossible to achieve.

27. On December 17, 2005, MMAI closed on the sale of the last condominium unit at the North Carolina Avenue Project. This last unit was purchased by Ms. Nichols. Ms. Melton pressured Ms. Nichols almost daily for two months to purchase the last condominium unit because Ms. Melton needed the proceeds of that sale to pay Mr. Wiegand.

28. On or about May 29, 2006, Melton and MMAI paid Mr. Wiegand $20,000.00, stating this sum "is all that I can afford to pay you."

29. On several occasions before and after receipt of Melton and MMAI's May 29, 2006, letter, Mr. Wiegand demanded that Ms. Melton and MMAI pay him the full 11.25% of gross profit (after taxes) on the condominium sales as agreed. To date, Melton and MMAI have refused to pay the amounts due.

## Count I
### Breach of Contract Against Ms. Melton and MMAI

30. The allegations of Paragraphs 1 through 29 are hereby incorporated by reference.

31. In or about August 2004, the Mr. Wiegand, Ms. Melton and MMAI entered into an oral contract, whereby Mr. Wiegand agreed, among other things, to: (1) monitor the North Carolina Avenue Project on a daily basis to make sure construction was proceeding; (2) monitor the Oriental Regency restaurant in Tyson's Corner, Virginia on a daily basis to make sure it was properly operating and accounting for revenues; (3) periodically monitor renovations to be performed on a New York City apartment; (4) periodically monitor interior build-out on a condominium in Las Vegas; and (5) make sure Ms. Melton's son, Christian Melton, attended school.

32. In exchange for performing the work described in Paragraph 31, above, Ms. Melton and MMAI agreed to provide Mr. Wiegand the following compensation: (1) round trip airfare from Hawaii to Washington, D.C.; (2) $3,000 cash per month for personal expenses; (3) a

car for Mr. Wiegand's business/personal use while in the Washington, D.C. area; (4) room and board at Ms. Melton's home; (5) a commitment that Ms. Melton and MMAI would enter into a mutually agreeable business venture with Mr. Wiegand in the "near future"; and (6) a recreational group trip to Bangkok, Thailand.

33. In consideration of Mr. Wiegand agreeing to expand the scope of his duties under the contract, the Parties agreed to modify the contract to include the following additional compensation to Mr. Wiegand: (1) 11.25%, of the gross profits from the sales of the completed condominium units at the North Carolina Avenue Project; (2) a bonus if gross sales of the condominium units exceeded $6,000,000.00.

34. Ms. Melton and MMAI failed to provide Mr. Wiegand the full agreed-upon compensation set forth in the Parties' contract.

35. Ms. Melton's and MMAI's failure to pay Mr. Wiegand the full, agreed-upon compensation constitutes a material breach of the Parties' contract.

36. As a result of Ms. Melton and MMAI's breaches, Mr. Wiegand has suffered damages in excess of $75,000, exclusive of interest, fees and costs.

37. Mr. Wiegand performed all the terms and conditions required of him under the contract and/or is otherwise excused from performance because of Ms. Melton and MMAI's breaches of its obligations to Mr. Wiegand.

38. Mr. Wiegand is entitled to an award of interest and costs against Ms. Melton and MMAI.

**WHEREFORE,** Mr. Wiegand demands judgment in his favor and against Ms. Melton and MMAI, in an amount in excess of $75,000, exclusive of interest, fees and costs, the exact

amount to be proven at trial, together with costs, attorneys' fees, and interest, and for such further and different relief as the Court deems just and proper.

### Count II
### Quantum Meruit Against Ms. Melton and MMAI

39. The allegations of Paragraphs 1 through 38 are hereby incorporated by reference.

40. Beginning in or about August 2004 and continuing until approximately December 2005, Mr. Wiegand performed valuable services for Ms. Melton and MMAI including: (1) monitoring and supervising the North Carolina Avenue Project on a daily basis; (2) facilitating the sale of the condominium units from the North Carolina Avenue Project by arranging for and supervising various necessary repairs and renovations; (3) monitoring the operations of the Oriental Regency restaurant; (4) monitoring renovations performed on a New York City apartment; (5) monitoring interior build-out on a condominium in Las Vegas; and (6) making sure Ms. Melton's son, Christian Melton, attended school.

41. Ms. Melton and MMAI accepted, used and enjoyed the aforementioned services rendered by Mr. Wiegand.

42. Ms. Melton and MMAI knew, or the circumstances reasonably put them on notice that, Mr. Wiegand expected to be paid for the services rendered.

43. As a result of Ms. Melton and MMAI's failure to compensate Mr. Wiegand for valuable services rendered, Mr. Wiegand has suffered substantial damages in excess of $75,000 exclusive of interest, fees and costs.

**WHEREFORE**, Mr. Wiegand demands judgment his favor and against Ms. Melton and MMAI, in an amount in excess of $75,000, exclusive of interest, fees and costs, the exact amount to be proven at trial, together with costs, attorneys' fees, and interest, and such further and different relief as the Court deems just and proper.

## Jury Demand

Mr. Wiegand respectfully requests a trial by jury on all issues so triable.

Dated: May 10, 2007

Respectfully submitted,

_____
ROBERT J. SYMON (DC BAR No. 436245)
BRADLEY ARANT ROSE & WHITE LLP
1133 Connecticut Avenue, NW, 12th Floor
Washington, D.C. 20036
Telephone: (202) 393-7150
Facsimile: (202) 719-8394

*ATTORNEY FOR ROSS A. WIEGAND*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Ross A. Wiegand

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   11001
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ROBERT J. SYMON (DC BAR NO. 436245)
BRADLEY ARANT ROSE & WHITE LLP
1133 Connecticut Avenue, NW, 12th Floor
Washington, D.C. 20036
Telephone: (202) 393-7150

## DEFENDANTS

Li Juen Melton, Melton Management Associates Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ● 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ● 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*   OR   ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ⦿ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 1332, Common law breach of contract and quantum meruit action

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐    DEMAND $ In excess of $75,000   Check YES only if demanded in complaint
JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒   If yes, please complete related case form.

DATE  5-10-07    SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.